HUDSON COUNTY CIRCUIT COURT.

IN THE MATTER OF AN APPLICATION TO HAVE THE NAMES OF THOMAS F. SULLIVAN AND EIGHTEEN OTHER PERSONS STRICKEN FROM THE PERMANENT REGISTER OF VOTERS OF HUDSON COUNTY.

Decided February 15, 1939.

For the petitioner and for the superintendent of elections, *Julius Seiden* and *Harry Bloch.*

For the commissioner of registration, *Benjamin Dowden.*

For the respondents, *James F. McGovern.*

BROWN, C. C. J. The petition in this cause was filed for the purpose of striking from the permanent register of voters of Hudson County as not being entitled to vote at any election district wherein they are registered the names of the following persons: Thomas F. Sullivan, John Burke, Stanley P. Gages, Edward McKeon, Alexander Moscinski, Charles H. Best, Eugene J. Moriarity, Jerome Murphy, Daniel F. Sheridan, Martin Ansbro, John Flannery, James Moylan, Daniel Mahoney, Robert L. Davis, John Tencza, Michael Verdon, John West, John Flynn and Stanley Martin. The petition

is filed by virtue of *R. S.* 19:33-1 (*Pamph. L.* 1930, *p.* 375, as amended by *Pamph. L.* 1930, *p.* 1283). The reasons assigned for striking those names are that the persons mentioned are not registered in conformity with the Election laws of New Jersey, in that they are not actually residing at 150 Pavonia avenue, in the second district of the second ward of Jersey City, from which address they are all registered. *R. S.* 19:4-1 provides in part, that every person "duly registered as required by this title, shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere. A person who will have on the day of general election the qualifications to entitle him to vote shall have the right to be registered for and vote at the primary election and register for and vote at the general election as though such qualifications were met before registration for the primary election." In order to effect a permanent registration in municipalities wherein permanent registration is provided by statute. (*R. S.* 19:30-1-2-3) a voter therein must furnish the commissioner of registration his or her full name and address including the street number and if living in a hotel, apartment or tenement house such additional information as may be deemed necessary to give the exact location of the applicant's place of residence. The voter is also required to furnish the name of the municipality and house number and street from which the voter last registered. It is clear, according to the above mentioned provisions of the Election law, that a voter when registered can vote from the election district in which is located the address from which the voter is registered and from no other address. It is contended on behalf of the respondents that the proceeding in the instant case "should only be utilized in cases where fraud in the registry is alleged." A reading of the statute (*R. S.* 19:33-1) does not support this contention. The proceeding is summary and the statutory test, to strike a name from the register, is met when the justice or judge hearing the matter is satisfied the person whose name should be stricken is not entitled to vote at any election in the election district wherein he is registered. The reason or reasons for striking the name does not have to be based only on fraudulent conduct. The subject of fraudulent registration is copiously dealt with and defined to be a misdemeanor in *R. S.* 19:34-1.

The contention on behalf of the respondents that a proceeding under *R. S.* 19:33-1 is in conflict with *R. S.* 19:31-11, paragraph b, in that it precludes a voter in a county of the first class from enjoying the right to apply in person or by mail to the commissioner of registration in case of a change of address to have such change noted on the permanent register. A reading of the sections of the Election law relied upon do not support this contention. All the provisions of the law relating to elections should be construed, if possible, so as to avoid conflict. A voter moving from one address to another, even in the same election district, should act with reasonable diligence to effect a change in the permanent register of such a change of address if he wishes to avail himself of the facilities provided by law for his convenience. His failure in this connection should not preclude the legally constituted authorities from performing their duty to keep the register of voters as a true and accurate record of persons eligible and qualified to vote. Even by virtue of paragraph "b," *R. S.* 19:31-11, when a voter by mail or in person makes application to have the permanent register changed so as to record a change of address if the commissioner is not satisfied as to the signature of the voter, the commissioner may notify the voter and require him to appear and answer questions as to his signature and change of address. If the voter fails to appear his name is placed on the inactive list until he does furnish the information to satisfy the commissioner of the truth of the application. Under *R. S.* 19:33-1, upon the justice or judge striking a name from the permanent register the commissioner of registration is required to transfer the name of the voter to the inactive list and so notify the voter. It appears that there is no conflict in the law as asserted by the respondents but on the contrary there is a consistency that is quite obvious. The voter is not deprived of voting from a *bona fide* residence if his name is stricken from the register. He is not entitled to vote from a registered address at which he does not reside. At the hearing in this matter it appeared from the uncontradicted testimony of all the witnesses who testified regarding the registration of the persons whose names are referred to in the petition that they were all registered from the second ward in the second election district at number 150 Pavonia avenue, Jersey City. In addition to this testi-

mony counsel for all the parties before the court agreed to this record of registration as a fact established in the case and this court so finds and determines. The major question remaining for determination is whether the persons named in the petition were actually residing in said district and at said address, particularly on the day of the hearing in this cause. Deputy Commissioner of Registration Gumaer testified from the permanent registers, which were produced at the hearing, that Charles H. Best, Edward A. McKeon, Alexander Moscinski and James Moylan did not vote at the last general election and that all other persons named in the petition whose names are sought to be stricken from the register did vote,. excepting Martin Ansbro. There appears no testimony whether this person did or did not vote. It was also testified to by this witness that Jane Collins, Timothy Collins, Jr., Cyril F. Collins and Anna Collins were registered as residing at number 150 Pavonia avenue and voting at the last general election. Morton Brown, a witness produced by the petitioner, testified that he was the agent of the owner of the premises at number 150 Pavonia avenue, which premises were rented to Jane Collins for about twelve years last past. Brown visited the premises in October, 1938, and on the day of the hearing. The premises consisted of a three-story building with a store, kitchen and three rooms in the rear on the ground floor. The second floor contains five rooms and the top floor four rooms. This witness testified there was room and sleeping accommodations for twenty-one or twenty-two persons on the premises and there was a leak in the northeast corner of the top floor of the building. Jane Collins called as a witness on behalf of the petitioner testified that she is a single woman and living with her at 150 Pavonia avenue is her mother Anna and her two brothers Timothy and Cyril. She has been operating a rooming house at the place mentioned for twelve years and that her mother before her was in the same business for over forty-four years. On November 1st, 1938, she had four rooms on the top floor occupied by eleven persons in six beds. Two of the rooms were large old fashioned rooms in which there were two double beds each. There were five double beds and one single bed occupying the top floor. The second floor consisted of six rooms which were occupied by six or seven beds and could accommodate

ten persons. One large room contains three double beds. On the ground floor there were three rooms containing one double and two single beds accommodating four persons. There was accommodations for twenty-five persons in the entire building on November 1st, 1938. The Collins family slept in two rooms on the second floor. The mother and witness in one room and the two brothers in another. Besides the family occupation the witness testified there was sleeping accommodations for eight other persons on the second floor. The witness, Jane Collins, promptly answered the questions propounded to her and furnished in detail all information requested. When asked to state the names of persons living at 150 Pavonia avenue on November 1st, 1938, she readily named the persons referred to in the petition and said they were all steady boarders; that six of those named were employed in work that required them to be away for a week now and then. The remaining fifteen boarders lived continuously at the address above mentioned and on the night preceding the hearing twelve of those persons actually slept at that address. This witness also testified to the length of time each person lived at 150 Pavonia avenue as follows: Eugene Moriarity, Charles Best, Daniel Sheridan, James Moylan, Michael Verdon and Robert L. Davis for one and one-half years; Thomas Sullivan, John Flannery and John Tencza about two years; Jerome Murphy and Stanley Martin three years; John Flynn four or five years; Edward McKeon five or six years; John West and John Burke six years; Alexander Moscinski eight years; Stanley P. Gages nine to ten years; Martin Ansbro twelve years and that Daniel Mahoney lived with the Collins family for twenty-two years. This witness testified that John Flynn left the Pavonia address on occasions when he went to the Federal Civilian Conservation Corps commonly known as a "C. C. C. Camp," and that Alexander Moscinski was a wounded war veteran on a pension, who journeys to Florida every season for his health for several months each year and thereafter returns to the Pavonia avenue address. She also testified that both Flynn and Moscinski and the other persons mentioned when temporarily away from 150 Pavonia avenue were charged for their rooms as they were reserved for them. Because of the leak and out of repair condition of the premises at 150 Pavonia avenue

referred to by the witnesses Brown and Collins, the following persons since last election have left the Pavonia address and their present address is unknown: James Moylan, Edward McKeon, John Burke, John West and Michael Verdon. Eugene J. Moriarity has moved to 146 Pavonia avenue and John' Tencza to 215 Thirteenth street, Jersey City. Sullivan, Gages and Best were produced as witnesses for the petitioner and their testimony was corroborated by the testimony of Jane Collins in the particulars so far as they related to the same facts or circumstances testified to by those witnesses. A voter has the right to choose his own domicile. Mere taking up a residence is not sufficient unless there be an intention to abandon a former domicile. Intention alone is not sufficient to establish a domicile—there must be some act in furtherance of the intention. In determining the *animus manendi* the declarations of the person are material and important. As a general rule the best evidence comes from the acts of the person rather than his or her declarations. *Schweitzer* v. *Buser,* 15 *N. J. Mis. R.* 217. *R. S.* 19:33-1 does not contemplate that a voter can move from one part of an election district to another, establish a voting residence and retain as a voting residence the place from which he moved. The statutory direction "shall order stricken from any register the name of any person who shall be shown to his satisfaction not to be entitled to vote at any election in the election district wherein he is registered" contemplates the address from which the voter is registered. It is well established in law that a mere temporary stay at a Federal Civilian Conservation Corps camp does not deprive a voter from voting from the address, district, county and state of which he is a resident. *Schweitzer* v. *Buser, supra.* This ruling applies to John Flynn mentioned in the petition. This court finds and determines that said John Flynn is registered to vote in conformity with the Election laws of the State of New Jersey and is actually a resident at 150 Pavonia avenue, in the second election district of the second ward in Jersey City, New Jersey. The fact that Alexander Moscinski, the wounded World War veteran who is unable to work and is pensioned by the federal government, is required for his health, to journey to Florida a few months each year does not prove that he is not entitled to vote from his Jersey City address. While

a wounded war veteran has no greater right than any other voter in the matter of registration it would be a startling pronouncement to say he has less. It is a common practice for persons of means to enjoy the climate of Florida for a few months each year without forfeiting their right to vote in an election district in which is situate their domicile from which they journeyed to the south. A wounded war veteran has every reason to make such a journey in the quest of health. This court finds and determines that Alexander Moscinski is registered to vote in conformity with the laws of the State of New Jersey and is actually a resident at 150 Pavonia avenue in the second election district in the second ward in Jersey City, New Jersey. By stipulation of counsel in the above entitled cause it is agreed that Eugene J. Moriarity has filed with the Commissioner of Registration a transfer of his voting address from 150 Pavonia avenue to 146 Pavonia avenue and John Tencza has also filed a transfer from 150 Pavonia avenue to 215 Thirteenth street in the city of Jersey City. This court finds and determines by the uncontradicted testimony produced that James Moylan, Edward McKeon, John Burke, John West, Eugene J. Moriarity, John Tencza and Michael Verdon are not now actually residing at 150 Pavonia avenue, Jersey City, New Jersey, and are not now entitled to vote in the second ward, second election district, Jersey City, New Jersey, as residing at said address. The court finds and determines by the uncontradicted testimony before it that Thomas F. Sullivan, Stanley P. Gages, Charles H. Best, Jerome Murphy, Daniel F. Sheridan, Martin Ansbro, John Flannery, Daniel Mahoney, Robert L. Davis and Stanley Martin are registered in conformity with the laws of the State of New Jersey as being entitled to vote in the second election district, in the second ward as residents at 150 Pavonia avenue, Jersey City, New Jersey. The judgment of this court is that the names of James Moylan, Edward McKeon, John Burke, John West and Michael Verdon be stricken from the register of voters as prayed for in the petition in this cause and that the prayer to strike all other names be denied. The order to strike does not pertain to the names of Eugene J. Moriarity and John Tencza as they have already effected a transfer of their voting addresses.